BOLIN, Judge.
Plaintiff owns, among other properties, certain described lots in the Village of Liberty Hill, Bienville Parish, Louisiana, which lots are covered by a 99-year timber lease granted to Southern Advance Bag & Paper Company, Inc., predecessor of defendant, Continental Can Company, Inc. The purpose of this action is twofold: (1) to recover damages for gravel allegedly wrongfully taken from the realty involved and (2) to terminate the lease contract by reason of its alleged breach by defendant. The trial judge found plaintiff failed to sustain the burden of proving his case by a preponderance of the evidence and rendered judgment in favor of defendant. Plaintiff appeals and we affirm the judgment.
In a pretrial hearing, at which both parties were represented by their attorneys, it was agreed the contested facts were: (1) whether defendant extracted from the property subject to the timber lease topsoil, subsoil, gravel and gravel-bearing ore; (2) if so, whether the taking of such by the defendant was done with the knowledge that it was being extracted from the leased property; and, assuming an affirmative *891 answer to the first two questions, (3) the amount and value of the soil so taken and the value of damages resulting to plaintiff’s property.
It was likewise agreed that the contested issue of law was whether, under the terms of said timber lease, the taking of topsoil, subsoil, gravel and gravel-bearing ore constituted a breach of such nature as to terminate the lease.
No witnesses were called by defendant, the defendant relying on the lack of evidence adduced by plaintiff on direct examination of his witnesses and on the answers elicited on cross-examination.
Crawford testified that he had lived on the property in question from his birth in 1922 until his sixteenth birthday; that since that time he had lived in Haynesville and presently lives in Oakdale, Louisiana. He. stated he had various people check on the property and in June of 1970 he learned through someone that large quantities of gravel had been dug and removed from parts of the leased property. However, when he made a visual inspection he was unable to determine exactly where the lots were by examining the plat on file. From this plat, a copy of which was filed in evidence, it appears the tract was subdivided into lots in 1908, but apparently it retained the appearance of undivided land. However, the lease attached to the petition reflected the timber was to be cut and removed from certain specifically numbered lots appearing on the plat. There were no stakes or monuments indicating the location of the lots and streets and alleys which belonged to plaintiff but which had never been developed. The lots in the area owned by plaintiff and Continental Can were in a somewhat checkered pattern. Thus, in the area in question, being primarily the Village of Liberty Hill, Bien-ville Parish, it was difficult for road crews to ascertain where Continental’s property lines ended and plaintiff’s began.
The principal witnesses called by plaintiff were Robert A. Fenstermaker, a civil engineer and surveyor, and William C. Postle, a graduate forester, called under cross-examination. The latter was regularly employed by Continental Can Company and had been from 1956, his present title being district woodlands manager, land and timber.
Mr. Fenstermaker was employed by plaintiff to make an inspection of the property in controversy and to estimate the amount of gravel and subsoil which had been removed from plaintiff’s land. He had obtained a reproduction of the plat -of the original survey, when the tract was divided into lots, and he attempted to identify plaintiff’s property from approximating distances and fitting the map to the subdivision as best he could. He made no survey of the property and all of his calculations were estimates based on observation and measurements assuming the dimensions and contours of the property were as he perceived them to be from the plat and the area surrounding the excavation. This witness superimposed on his copy of the plat two areas, designated as Excavation Sites Nos. 1 and 2. Shaded in red are the portions of these two excavations located on plaintiff’s property from which gravel was allegedly taken. He estimated 3,200 cubic yards of gravel and subsoil had been removed from the two sites shown on the plat. However, on cross-examination he admitted he could find no markers or other signs indicating exactly which lots were owned by plaintiff and which were owned by Continental Can.
Examination of the plat, with the additions made by Fenstermaker, purports to show that a large gravel pit had been excavated on parts of five lots owned by plaintiff and the remainder from parts of six lots owned by Continental. No witness could specifically say the excavation was on plaintiff’s lots.
Mr. Postle, defendant’s employee, testified he had been informed his men were removing gravel from plaintiff’s property. He immediately asked his engineering and *892 development forester, Mr. Trevison, to go on the property to see if defendant’s crews were removing gravel from lots that did not belong to Continental. Postle stated Trevison returned and said, “Bill, I don’t think so but it is a possibility.” When queried as to whether he had required Trevison to survey the property in order to determine if the gravel pit was wholly on defendant’s land or on land leased from plaintiff, he replied he had not.
Upon further questioning it was brought out that Continental and the Bienville Parish Police Jury had each used road equipment belonging to the other, interchanging equipment when necessary; that each had removed soil, gravel, et cetera, from the pit for use in road work.
On appeal plaintiff does not urge his claim for damages but seeks primarily to have the lease dissolved because of defendant’s use of the leased land, i.e., excavating and removing gravel and ore from plaintiff’s property.
As authority for the petition for dissolution plaintiff relies on Louisiana Civil Code Articles 2710 and 2711, which provide:
“Art. 2710. The lessee is bound:
“1. To enjoy the thing leased as a good administrator, according to the use for which it was intended by the lease.
“2. To pay the rent at the terms agreed on.”
“Art. 2711. If the lessee makes another use of the thing than that for which it was intended, and if any loss is thereby sustained by the lessor, the latter may obtain the dissolution of the lease.
“The lessee, in that case, shall be bound to pay the rent, until the thing is again leased out; and the lessee is also liable for all the losses which the owner may have sustained through his misconduct.”
Our reading of the lease, the testimony of the witnesses, and the trial judge’s observations convince us plaintiff has failed to prove with any degree of certainty that gravel was removed from his portion of the property under lease to defendant. Having reached this conclusion, it is unnecessary for us to decide the question of whether removal of gravel from the leased property by the lessee entitled the lessor to cancel the lease under Louisiana Civil Code Articles 2710 and 2711.
The judgment is affirmed at plaintiff’s cost.